## Case No. 8,929.

### MACUMBER v. ST. LOUIS LIFE INS. CO.

[6 Ins. Law J. 591.]

Circuit Court, D. Nebraska. May Term, 1877.

LIFE INSURANCE—EXPIRATION—RENEWAL PREMIUM—SUBSEQUENT TENDER.

[The renewal premium on a life insurance policy was due on or before noon Sept. 1st. On Aug. 31st the agent of the insurance company in a personal interview desired the assured to make payment. The assured replied that he was unable to do so, but was about to start for St. Louis in order to borrow money from his brother, and in case he was successful he would upon his return pay the premium. The agent notified him that in that case his insurance would expire the next day. On the 2d of September at about 2 p. m. the assured was killed in a railway accident while on his way to St. Louis. At about 4 p. m. of the same day the amount of

---

the premium was tendered by the friends of the assured. *Held*, that the insurance company was not liable on the policy.]

The case is upon a policy of life insurance in the sum of $2,500 executed by defendant, dated September 1st, 1874, upon life of Edwin Macumber, to plaintiff, [Lydia C. Macumber,] pursuant to application made by Edwin M., August 27th, 1874. Copy of policy is set out in the answer, and copy of application filed with the stipulation in the case.

The first premium, $54.63 was paid, and policy delivered September 9th, 1874. The second premium, by the terms of the policy, was due September 1, 1875, at noon, and was not paid before that time, nor yet tendered, until after Macumber's death, which occurred in consequence of a railway accident about 2 o'clock in the afternoon, September 2d, and tender was made about 4 o'clock in the afternoon of that day by friends of the plaintiff. It was in the policy, "agreed that if the assured shall fail to pay any premium due and payable after the date thereof, on or before the time and day above mentioned, (12 noon, September 1st in each year,) or fail to pay at maturity any note or draft taken in payment of any premium, then and in every such case this policy shall cease and determine, and said company shall not be liable for any sum whatever, on account of said policy." The policy also provided as follows: "Provided always, and it is hereby declared, * * * * nothing in this contract shall be construed to bind the said company by any declaration. admission, or assertion of its agent made before, during. or subsequent to the execution of this policy, or by any custom of said company or its agents, or by the act of said agent in receiving any payment after the same shall have become due and payable, it being hereby expressly understood that no agent of said company is authorized to make, alter, or discharge any contract of said company, or waive any forfeiture thereunder." The policy was not actually executed by the company in St. Louis, Mo., until the 2d or 3d day of September, 1874, and it was not received by the agent at Lincoln, Neb., where the assured resided, until several days afterward, and was not delivered to the assured until Sept. 9, 1874. The policy contained the provision that it "shall not take effect or become binding on the company until the first annual premium shall have been paid. to Henry Gerner, agent, evidenced by his receipt below." The first annual premium was paid Sept. 9, partly in cash and partly by a 30 day note, payable to Gerner personally, which was afterward paid. Renewal receipts were transmitted from the company's office at St. Louis to Gerner, the local agent of the defendant for the state of Nebraska, to be valid only when countersigned by the said agent, and deliver-

ed on the payment of the annual premium for the ensuing year. As between the company and the agent, the instructions of the letter were not to deliver the renewal receipts until actual payment in money to the agent of the premium, on or before the day named in the policy;—if not paid by the day named, the agent could accept payment after the day, within six days, upon the certificate of the company's medical examiner of the continued good health of the assured. The agent, if the assured was considered good, frequently delivered the renewal receipts and trusted the assured for the amount for 30 days or less, on taking his note or time check for the amount, and charging himself with the amount. The company did not know this, but did know that he held renewal receipts for collection after the day named in the policy, and that the agent afterward reported these as collected and forwarded the amount, and this was received by the company without objection and without requiring any certificate of the medical examiner of the company as to the continued good health of the assured.

The above relates to the general course of the defendant's business at Lincoln, where the policy in suit was issued, and where the assured and local agent of the company resided. In respect to the renewal receipt for the policy in suit, the facts are these: It was transmitted by the company to the local agent, Gerner, at Lincoln, early in August, 1875. The agent notified the assured, by letter, that it had arrived, and that the amount was payable Sept. 1, 1875, at noon; and on the last day of August, 1875, an interview was had between the agent and the assured, and the agent desired the assured to make payment. The assured replied that he was then unable to make payment; that he was about to start to St. Louis to borrow some money ·of his brother, and if· he succeeded he would pay the premium on his return. The agent notified him that in that case he would be uninsured after Sept. 1, and until the premium was paid, and offered to countersign and deliver the renewal receipt to the assured if he would pay part of the premium and give a due-bill to the agent for the balance, payable in 30 days, which proposition the assured declined to accept, and the renewal receipt was not countersigned or delivered. The assured intended to keep his policy good, and to make payment within 30 days if he should be able. On the 2d day of Sept., 1875, the assured, when en route to St. Louis to see his brother and obtain money from him, was killed by an accident to the railway train on which he was traveling.

DILLON, Circuit Judge. Upon the foregoing facts, I find, as a conclusion of law, that the plaintiff is not entitled to recover, and that the defendant is entitled to judgment.